WASHINGTON COUNTY *v.* YAZOO & M. V. R. Co. *et al.*

[88 South. 284, En Banc, No. 21572.]

RAILROADS.  *Foreclosure of mortgage extinguishment of stockholders' rights.*

Where a railroad company has issued bonds, the payment of the interest and principal of which are secured by a mortgage on its franchise and property, and default is made in the payment of the interest, and under the terms of the mortgage the franchise and property are sold, all rights of the stockholders in the railroad are by this foreclosure sale lost and destroyed.

APPEAL from chancery court of Issaquena county.

HON. J. G. McGOWAN, Acting Chancellor.

Suit by Washington County against the Yazoo & Mississippi Valley Railroad Company and others.  Decree of dismissal, and complainant appeals.  Affirmed.

*Walton Shields* and *Manyard & Fitz Gerald,* for appellant.

*C. N. Burch, H. D. Minor, E. A. Smith, W. S. Horton, Blewett Lee* and *Percy & Percy,* for appellees.

No brief found in the record for either side.

SYKES, J., delivered the opinion of the court.

In this suit Washington county seeks to have the Yazoo & Mississippi Valley Railroad Company held as trustee of one thousand shares of stock in this railroad for the benefit of appellant, and that this appellee railroad company be required to issue the stock to the appellant county, and, further, for an accounting for dividends and other moneys which may be due the county.  There were various amendments and also an amended bill filed by the appellant (complainant) in the court below.  An elaborate an-

swer was interposed by the defendant (the appellee railroad company), and the cause was heard on these pleadings and proof consisting of depositions, oral testimony, and record proof. There is also a kindred suit against this same appellee filed by the city of Greenville in which the city claims five hundred shares of the stock of the appellee railroad company. These bills were dismissed at the final hearing by the chancellor, and from each separate decree an appeal is prosecuted here.

In this opinion we shall deal alone with the appeal of the county, as the principles herein decided are conclusive also of the rights of the city.

It is the contention of the appellant that in equity it is entitled to demand that the Yazoo & Mississippi Valley Railroad Company recognize it as a stockholder in this company to the extent of one thousand shares of the capital stock of the par value of one hundred thousand dollars, and issue to the complainant certificates of stock for this amount, and to account to complainant as such stockholder for dividends and other moneys due; that under the articles of consolidation of the Louisville, New Orleans & Texas Railway Company with the Yazoo & Mississippi Valley Railroad Company, made in 1892, complainant is entitled to this right, because at that time in equity complainant was entitled to one thousand shares of the capital stock of the Louisville, New Orleans & Texas Railway Company of the par value of one hundred thousand dollars; that these one thousand shares of the capital stock of the Louisville, New Orleans & Texas Railway Company to which complainant was in equity entitled at the time of this consolidation were left unissued on the books of the Louisville, New Orleans & Texas Railway Company in 1887, and are the only shares unissued of the four thousand five hundred thirty shares which the majority stockholders of this railway company, who were in control of it, had agreed to issue to themselves under the corporate name of the Financial Improvement Company as a part consideration for the purchase by the Louisville,

New Orleans & Texas Railway Company from them of all of the corporate property of the Memphis & New Orleans Railroad & Levee Company, in which they were also the majority stockholders in control; that there was also a further consideration for said purchase which was certain bonds of the Louisville, New Orleans & Texas Railway Company; that the Financial Improvement Company was a corporation organized to construct the Louisville, New Orleans & Texas Railway Company and its constituent lines, and was, by virtue of the construction contracts under which the various lines of railroad were built, and which were subsequently merged into the Louisville, New Orleans & Texas Railway Company, the owner of all of the stock and bonds of this railway company, and that the Memphis & New Orleans Railroad & Levee Company, which we shall hereafter call, for convenience, the Levee Company, was so constructed; that at the time of the purchase of the Levee Company railroad by the Louisville, New Orleans & Texas Railway Company the Financial Improvement Company, owned all of the stock of the Levee Company, except that owned by the county of Washington and the city of Greenville, the county owning one thousand shares, of the par value of one hundred thousand dollars, and the city owning five hundred shares, of the par value of fifty thousand dollars; that the Levee Company was a corporation on paper only, and had no money, except the bond subscribed to it by the county and city, and was actually constructed, and this construction paid for, by the Louisville, New Orleans & Texas Railway Company and was known as the Leland branch of this railroad. It had fifty-six and fifteen hundredths miles of railroad which connected with the main line of the Louisville, New Orleans & Texas Railway Company at Leland, in Washington county.

The Memphis & New Orleans Railroad & Levee Company was a Mississippi corporation, chartered in 1882 by the legislature of this state. The charter of this company authorized a capital stock of ten million dollars. The county

of Washington issued one hundred thousand dollars of its bonds to this company and received therefor one thousand shares of stock of the par value of one hundred dollars a share.

It is the contention of the appellant that this Levee Company was consolidated with the Louisville, New Orleans & Texas Railway Company, and that under this consolidation proceeding the county was entitled to the same number of shares of stock in the latter railroad, and that upon the consolidation, in 1892, of the Louisville, New Orleans & Texas Railway Company and the Yazoo & Mississippi Valley Railroad Company the appellant was entitled to one thousand shares of the last-named railroad company and to an accounting as above stated.

There are many interesting questions presented by this appeal, all of which have been carefully considered by the court. It is, however, unnecessary to consider but one of these questions, as it is determinative of the case.

It is the contention of the appellee that all of the rights of the appellant company as a stockholder in the Levee Company were wiped out and lost in 1887, when the franchise and corporate property of this company were sold out and foreclosed under a recorded mortgage executed by this company to secure the payment of principal and interest of bonds issued for the sum of one million one hundred and twenty-three thousand dollars. This contention, we think, is sustained by the record.

It is necessary to state more in detail the facts of the case. The Levee Company, in which Washington county was a stockholder, was incorporated in 1882; Chas. P. Huntington and others being the incorporators. The authorized amount of capital stock to be issued was ten million dollars. It nowhere appears from the record whether any other stock of this Levee Company was issued, except the one thousand five hundred shares issued to the county and city. That part of the Levee Company railroad actually constructed was fifty-six and fifteen hundredths miles. This was constructed by the Financial Improve-

ment Company, a railroad construction company chartered under the laws of the state of Colorado. The record is silent as to the contract for construction between the Financial Improvement Company and the Levee Company. From the testimony of Maj. J. M. Edwards, a witness for the complainant, it seems that the franchises and rights or controlling number of shares of stock of the Levee Company were purchased by or for the parties who were constructing the constituent companies of the Louisville, New Orleans & Texas Railway Company, from which answer we infer that by some agreement the stockholders of the Financial Improvement Company acquired control of the Levee Company. The stock of the Financial Improvement Company was owned by R. T. Wilson & Co. and the Pacific Improvement Company. There is nothing in the record to show that any stock, except the one thousand five hundred shares above mentioned of the Levee Company, were issued either before or after it was constructed. In 1885, however, this Levee Company executed to Edward H. Pardee and Albert Crolius, trustees, a mortgage to secure its bonds, and this mortgage was recorded in the deed records of Washington county. The only testimony relating to the issuance of these bonds and the execution of this mortgage to secure their payment is that of Maj. J. M. Edwards, witness for complainant. From his testimony it is evident that the Levee Company had no means of its own, and that the cost of constructing it was borne by the Financial Improvement Company, and that its only method of paying the Financial Improvement Company was with these bonds or with its stock and bonds. This witness only recalls the issuance of these first mortgage bonds for the sum of one million one hundred and twenty-three thousand dollars. Maj. Edwards further testified that he did not remember, and had no way of ascertaining, the actual cost of construction of the Levee Company, neither did he know the value of its corporate property. In 1887 this mortgage was foreclosed and purchased by Chas. M. Calhoun. The deed to Calhoun recites default in the payment of the

interest on the mortgage bonds. The consideration named in the deed is five hundred fifty thousand dollars. Maj. Edwards testified that the object of the bondholders in making this foreclosure sale was to receive the money for their bonds upon which default had been made; that it was not the object of the purchasers under that foreclosure to merge or consolidate the Levee Company with the Louisville, New Orleans & Texas Railway Company. This witness further testified that Chas. P. Huntington was president of the Levee Company in 1883, but that he does not know who the officers were after that date; that he does not know what has become of the books and minutes of the Levee Company; that he does not know what amount of stock was issued by this company prior to the foreclosure; that so far as he knows the only transfer of the interest to the Levee Company made by Chas. P. Huntington or by any one else was by transfer of stock; that when the Levee Company railroad was completed by the Financial Improvement Company, the Financial Improvement Company was paid by the issuance of first mortgage bonds, income bonds, and stock in the Levee Company, but he does not know what stock or what income bonds were issued; the only bonds he knows of are those evidenced by the mortgage. Immediately upon his purchase of the Levee Company, Chas. M. Calhoun executed a deed to it to the Louisville, New Orleans & Texas Railway Company.

It is the contention of the appellant that Calhoun, the purchaser at the foreclosure sale, was really the representative at this sale of the Financial Improvement Company, or the Louisville, New Orleans & Texas Railway Company, or both; that no money was actually paid by him in the transaction; that previous to his purchase it had been agreed between the Financial Improvement Company and the Louisville, New Orleans & Texas Railway Company what amount this railway company was to pay the Financial Improvement Company for the Levee Company; and that all of these agreements were carried out between these companies and their agent or employee, Calhoun.

The record shows that the constituent lines of railroad which, when consolidated, formed the Louisville, New Orleans & Texas Railway Company, were built by the Financial Improvement Company, and that under its contract with the Louisville, New Orleans & Texas Railway Company this construction company received a certain amount of the stock and bonds of the Louisville, New Orleans & Texas Railway Company. There are no books of the Financial Improvement Company introduced in evidence. Some of the records of the Louisville, New Orleans & Texas Railway Company, however, are introduced, and from items appearing therein it seems that the actual construction price of the Levee Company was approximately five hundred and fifteen thousand dollars. The construction price of the Levee Company railroad, as well as of the branches of the Louisville, New Orleans & Texas Railway Company, appear upon the books of the Louisville, New Orleans & Texas Railway Company. The Levee Company was operated by the Louisville, New Orleans & Texas Railway Company from its completion.

It is the contention of the appellant that the Financial Improvement Company, the Louisville, New Orleans & Texas Railway Company, and the Levee Company, though having different charters of incorporation, were virtually owned and controlled by the same people, and, looking through form to substance, constitute, in reality, the Louisville, New Orleans & Texas Railway Company; that the attempted foreclosure of the Levee Company was, in reality, but a consolidation of this company with the Louisville, New Orleans & Texas Railway Company because the Financial Improvement Company was, in reality, the owner of both lines; that the receipts from the operation of the Levee Company were commingled with those of the Louisville, New Orleans & Texas Railway Company; and that there were sufficient earnings from this company to have paid the interest on these bonds, and therefore there was, in reality, no default in the payment of the interest upon the bonds.

The bonds of the Levee Company were issued and the mortgage to secure them was executed before the Louisville, New Orleans & Texas Railway Company began the actual operation of trains upon this line.  The record does not show any contract between the Levee Company and the Louisville, New Orleans & Texas Railway Company as to this arrangement.  There are no books, papers, or records of any kind of the Levee Company introduced in testimony.  It is presumed that they are lost or have been destroyed.  There are no records of any character whatsoever of the Financial Improvement Company introduced. These records have been lost or destroyed.  Only partial records of the Louisville, New Orleans & Texas Railway Company have been introduced.  We do know, however, that the Levee Company was a Mississippi corporation, a separate and distinct corporation from the Financial Improvement Company a Colorado construction corporation, and the Louisville, New Orleans & Texas Railway Company.  The three are separate and distinct corporate entities.  These three corporations may the Financial Improvement Company, a Colorado conhave had the same stockholders and bond owners.  The dominant spirits of the three may have been the same. From the testimony in the case and the partial records of the Louisville, New Orleans & Texas Railway Company, however, it cannot be said that these three corporations really constituted but one corporation; neither can it be said that the mortgage of the Levee Company to secure the bond issue of one million, one hundred and twenty-three thousand dollars was a fraudulent mortgage to secure a fictitious indebtedness; neither can it be said from this testimony that there were no defaults in the payments of the interest due on these bonds.  The only witness who testified in the case, Maj. Edwards, a witness for the complainant, testified, in effect, that the bonds were issued to the Financial Improvement Company in payment for the construction of the work; that there was a default in the payment of the interest thereon and a sale of the road to

Calhoun. It makes no difference whether Calhoun purchased for the Financial Improvement Company or for the Louisville, New Orleans & Texas Railway Company. Either of these corporations had a right to purchase at this foreclosure sale. This sale took place in 1887. The deed to Calhoun and the deed from Calhoun to the Louisville, New Orleans & Texas Railway Company were promptly placed of record in Washington county. About thirty years elapsed from the recording of these deeds to the institution of this suit.

The records of the Louisville, New Orleans & Texas Railway Company indicating the cost of the Levee Company and that it was paid by the Louisville, New Orleans & Texas Railway Company do not overcome the recitals of the mortgage and deeds and the testimony of Maj. Edwards to the effect that the mortgage was given in good faith to secure this bonded indebtedness, and that there was a default in the payment of the interest on the bonds. In other words, the complainant has failed to show a fraudulent or fictitious mortgage and foreclosure sale, and therefore has failed to show a consolidation of the Levee Company with the Louisville, New Orleans & Texas Railway Company. By this foreclosure all rights of the stockholders in the Levee Company were lost. The record shows that by virtue of its agreement with the Louisville, New Orleans & Texas Railway Company the Financial Improvement Company became the owner of a large number of shares of the Louisville, New Orleans & Texas Railway Company, and that this company voluntarily offered the county and city to have issued to them in exchange for their stock in the old Levee Company a corresponding number of shares of stock of the Louisville, New Orleans & Texas Railway Company. Neither the county nor the city ever agreed to this exchange or called for this stock. The Financial Improvement Company under its contract with the Louisville, New Orleans & Texas Railway Company never called for the issuance by the railway company of this stock, but, it seems, informed the officials of the Louisville, New Or-

leans & Texas Railway Company that it would be issued
in exchange for this old Levee Company stock held by the
county and city. This was merely an unexpected volun-
tary offer on the part of the Financial Improvement Com-
pany, which offer was never accepted. So far as this rec-
ord discloses, the Financial Improvement Company is a
defunct corporation. Its voluntary offer is not binding
upon the appellee, which is in every way a stranger there-
to. It is therefore our conclusion that the rights of the
county as a stockholder in the Levee Company were des-
troyed by the foreclosure sale in 1887. The learned chan-
cellor so decided, and his decree is affirmed.

                                                  *Affirmed.*